EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

GLOBAL HORIZONS, INC., d/b/a Global Horizons Manpower, Inc.; Green Acre Farms, Inc.; Valley Fruit Orchards, LLC; and Does 1–10 inclusive, Defendants.

No. CV–11–3045–EFS.

United States District Court, E.D. Washington.

Signed March 18, 2015.

Filed March 19, 2015.

Anna Y. Park, Sue Noh, Derek W. Li, Elizabeth Esparza–Cervantes, Lorena Garcia–Bautista, United State Equal Employment Opportunity Commission, Los Angeles, CA, Connie K. Liem, United States Equal Employment Opportunity Commission, San Diego, CA, Damien Lee, Equal Employment Opportunity Commission, Seattle, WA, Rumduol Vuong, United States Equal Employment Opportunity Commission, Fresno, CA, for Plaintiffs.

Javier Lopez–Perez, Law Office of Javier Lopez, Los Angeles, CA, Joshua David Dabling, Dabling Law Firm PLLC, Shoreline, WA, Christopher J. Degroff, Gerald L. Maatman, Jr., Seyfarth Shaw LLP, Chicago, IL, Brendan Victor Monahan, Sean A. Russel, Stokes Lawrence Velikanje Moore & Shore, Yakima, WA, Justo G. Gonzalez, Olivia E. Gonzalez, Stokes Lawrence PS, Seattle, WA, Laura Jean Maechtlen, Seyfarth Shaw LLP, San Francisco, CA, Robb D. McFadden, Perkins Coie, San Francisco, CA, for Defendants.

## ORDER GRANTING THE GROWER DEFENDANTS' JOINT MOTION FOR ATTORNEY'S FEES AS PREVAILING PARTIES UNDER TITLE VII

EDWARD F. SHEA, Senior District Judge.

Congress established Title VII, 42 U.S.C. § 2000e *et seq.*, with the purpose of eliminating discrimination in the workplace and placed the responsibility to implement

and carry out Title VII on the Equal Employment Opportunity Commission (EEOC). To balance Title VII's purpose with the need to ensure that businesses are not forced to litigate baseless discrimination claims, Congress imposed a statutory duty on the EEOC to provide notice to an employer of the charged discriminatory practice, investigate the charge, and conciliate with the business before filing a lawsuit. Title VII and Supreme Court case law encourages the EEOC to utilize these processes to ensure that a lawsuit is filed reasonably, with foundation, and is not frivolous, imposing a potential award of attorney's fees against the EEOC if it files a lawsuit that did not meet these standards. Whether the EEOC's lawsuit against Defendants Green Acre Farms, Inc. ("Green Acre") and Valley Fruit Orchards, LLC ("Valley Fruit") (collectively, "Grower Defendants") was reasonable, not frivolous, or filed with foundation is the matter presently before the Court.

After examining the record and considering the importance of Title VII and the EEOC's intended purpose, the Court finds the EEOC filed foundationless Title VII claims against the Grower Defendants.[1] As a result, the Grower Defendants, as prevailing parties in this baseless lawsuit against them, are entitled to reasonable attorney's fees and costs under Title VII.

**A. Authority**

Although litigants must typically bear their own attorney's fees, the parties agree that a prevailing defendant in a Title VII action may be awarded costs, including attorney's fees, pursuant to 42 U.S.C. § 2000e–5(k). Section 2000e–5(k) states, "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the [EEOC] or the United States, a reasonable attorney's fee (including expert fees) as part of the costs." *Id.* § 2000e–5(k). Relying on this statutory language, the Supreme Court ruled that a "district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). This is a stringent standard. *Harris v. Maricopa Cty. Sup. Ct.,* 631 F.3d 963, 971 (9th Cir.2011); *EEOC v. Propak Logistics,* 746 F.3d 145, 151 (4th Cir.2014); *EEOC v. Great Steaks, Inc.,* 667 F.3d 510, 517 (4th Cir.2012).

There is no dispute that the Grower Defendants prevailed in this lawsuit. *See, e.g., Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (setting forth the prevailing-party standard). Yet, the EEOC contends the Grower Defendants are unable to satisfy § 2000e–5(k)'s high burden for an award of attorney's fees to a prevailing defendant because "the full factual record developed in litigation demonstrates that the EEOC's suit was not frivolous, unreasonable, or without foundation after the EEOC conducted a nationwide investigation of [Global's] pattern or practice of discrimination which also manifested at" the Grower Defendants' orchards. EEOC's Opposition to Grower Defendants' Joint Motion for Attorney's Fees as Prevailing Parties under Title VII, ECF No. 601 at 2. And the parties disagree as to what information the Court may consider in conducting its Title VII prevailing-defendant attorneys-fee

---

1. The EEOC's claims against Global were reasonable, founded, and not frivolous. This motion deals solely with whether the EEOC's claims against the Grower Defendants satisfy these same standards: they do not.

analysis. The Court begins its analysis with this scope-of-review issue.

## B. Scope of Review

The EEOC emphasizes that the Court may not engage in a *post hoc* review of the EEOC's decision to file a lawsuit but rather must conduct a "*de novo* review of all the facts obtained in the litigation." EEOC's Opp. to Grower Defendants' Joint Motion for Attorney's Fees as Prevailing Parties under Title VII, ECF No. 601 at 2. The EEOC does not support its *de novo*-review request with a legal citation. The EEOC also argues that the Court's inquiry into the EEOC's pre-lawsuit actions is limited because of the discretion granted to the EEOC by Congress.[2]

To determine the scope of review, the Court turns to the seminal case: *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). In *Christiansburg Garment*, the Supreme Court emphasized that a district court is to "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id.* at 421–22, 98 S.Ct. 694. This is to ensure that a Title VII plaintiff, including the EEOC, is not discouraged from bringing claims that are not airtight as "[d]ecisive facts may not emerge until discovery or trial." *Id.* at 422, 98 S.Ct. 694.

 After reviewing *Christiansburg Garment* and its progeny, the Court holds that, once the EEOC's Title VII claims have been resolved in the defendant's favor and the defendant files a motion for attorney's fees, a court must consider the totality of the information possessed by the EEOC when it filed the lawsuit in order to determine if the filing was reasonable, frivolous, or without foundation. This totality-of-the-circumstances assessment requires the court to consider what the EEOC learned during its investigation, prior to its reasonable-cause determination, and during its conciliation process and thereafter. Although the Court is not reviewing the individual sufficiency of the EEOC's reasonable-cause determination or conciliation process, the Court must consider the information discovered (or failed to be discovered) during these processes in order to assess whether the EEOC filed the lawsuit with foundation or whether the filing was reasonable or frivolous. Permitting judicial review of the EEOC's pre-lawsuit knowledge and decision to file the lawsuit based on such knowledge, at this stage of the litigation, *i.e.*, after liability has been determined in the defendant's favor, is consistent with Title VII's purposes—which is to ensure that discriminatory conduct is eliminated while at the same time ensuring that businesses are not unduly burdened by the Title VII process. *See Christiansburg Garment Co.*, 434 U.S. at 422, n. 20, 98 S.Ct. 694 ("The other side of this coin is the fact that many defendants in Title VII claims are small- and moderate-size em-

---

**2.** The EEOC raised similar agency-discretion arguments earlier in this litigation, arguing that because of the discretion given to it by Congress, the Court could not inquire into the sufficiency of the EEOC's pre-lawsuit activities for purposes of ascertaining whether a defendant's affirmative defense of failure to satisfy pre-lawsuit requirements could be granted. In connection with that argument, the Court ruled that "prior to a liability determination in a Title VII lawsuit, a court's re-view of the EEOC's pre-lawsuit conciliation efforts are [sic] limited to reviewing the [face of the] EEOC's complaint to ensure that it plead that it satisfied this pre-lawsuit requirement." ECF No. 582 at 32–33. At that time, the Court noted that it need not determine whether a "court may review the EEOC's pre-lawsuit conciliation efforts when ascertaining whether attorney's fees should be awarded to the prevailing employer defendant." *Id.* at 32.

ployers for whom the expense of defending even a frivolous case may become a strong disincentive to the exercise of their legal rights.").

■ Although the Court considers the totality of the information possessed by the EEOC when it filed the lawsuit, the Court need not consider the EEOC's intent when it filed the lawsuit. *See Propak Logistics*, 746 F.3d at 151. With this scope of review, the Court turns to the facts at hand.

## C. Facts

### 1. Request to Strike

■ In support of the EEOC's opposition to the attorneys-fee motion, EEOC counsel Derek Li filed a declaration, ECF No. 602. The Grower Defendants ask the Court to strike the following portions of Mr. Li's Declaration because they contain counsel's opinions and are therefore not evidence: paragraphs 2.a-m, 3.a-k, and paragraph 4 (EEOC's response column). ECF No. 604 at 2.

After reviewing the declaration, the Court finds portions of Mr. Li's declaration contain his opinion regarding the facts summarized therein. For example, Mr. Li opined, "As a result [of the previously listed experiences], Chumpang escaped from working at the farm *supporting the EEOC's constructive discharge claims.*" ECF No. 602 at 2 (emphasis added). To the extent the declaration contains Mr. Li's opinion regarding the evidence, the Court strikes those portions of Mr. Li's declaration and does not consider these opinions. The Court has considered the filed declarations and statements of the Thai workers' themselves, documented communications between counsel, EEOC documentation, and other factual events, in light of the entire record.

### 2. Pertinent Events

The Court is familiar with this case, parties, and background, having addressed motions to dismiss, discovery motions, and summary-judgment motions. The Court includes herein facts pertinent to the motion at hand in this "Pertinent Events" section. More details regarding the occurrences at the orchards and the Thai workers' housing, living, and transportation while working at the Washington orchards can be found in the Court's summary-judgment orders. ECF Nos. 348, 582, & 608 (tentative order).

In 2004 and 2005, Thai individuals were brought to the United States by Global to work at Green Acre and Valley Fruit orchards in Washington, as well as at other agricultural businesses in California, Hawaii, and other states, pursuant to a federal H–2A guest worker program. In the fall of 2004 and 2005, some of the Thai individuals absconded from the farms. Many of these Thai individuals went to California and made contact with the Thai Community Development Center (CDC) in Los Angeles. At some point either the Thai CDC, or the Thai individuals with the assistance of the Thai CDC, contacted the EEOC to seek assistance for the Thai individuals regarding their immigration status and the experiences they had while employed by Global.

Many of the Thai individuals filed charges of discrimination with the EEOC. For instance, on April 12, 2006, Laphit Khadthan filed a charge of discrimination with the EEOC against Green Acre and Global, claiming he was discriminated and retaliated against on the basis of his national origin by these companies. ECF No. 265, Ex. A at 1–2; ECF No. 556, Ex. 215. Likewise, Marut Kongpia filed a charge of discrimination against Valley Fruit and Global, alleging that he was discriminated and retaliated against on the

basis of his national origin. ECF No. 265, Ex. B at 1; ECF No. 557, Ex. 216. Notably, the descriptive language in the "particulars" section of these charges of discrimination is the same, stating:

I. Since [2003/2005], I have been harassed, subjected to different terms and conditions of employment, and intimidated in all aspects of employment with [Green Acre/Valley Fruit/Global], due to my national origin (Thailand).

II. On many occasions, I objected [sic] the terms and conditions of employment but was ignored.

III. I believe I have been harassed, subjected to different terms and conditions of employment, and intimidated because of my national origin (Thailand) and retaliated against for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

IV. Further since [2003/2005], I believe that employees as a class have been discriminated against due to their national origin (Thailand) and retaliated against for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Id., Exs. A & B. Similar charges of discrimination were filed by 71 other Thai workers against Green Acre, and 27 Thai workers against Valley Fruit. ECF No. 301 ¶ 13.

In June and July 2006, the Grower Defendants' counsel wrote position-statement letters to the EEOC in response to the charges of discrimination. These letters 1) advised the EEOC that the Thai workers were not employed by the Grower Defendants but rather by Global, 2) highlighted that the allegations contained in the charges of discrimination were vague, and 3) requested that the EEOC provide the Grower Defendants with specifics as to the alleged discriminatory and retaliatory acts. ECF No. 265, Ex. C at 2–3 & Ex. D at 2–21. There is no filed documentation reflecting whether the EEOC responded to these letters.

In September 2007, the EEOC interviewed Phiphop Khamkaeo, ECF No. 602, Ex. 6. Mr. Khamkaeo discussed his experiences working for Global at Green Acre in 2004, Valley Fruit in 2005, and then at farms in Hawaii and California thereafter. The only complaints that Mr. Khamkaeo shared regarding his work and living experiences in Washington were that in 2004 the residence he lived in was unclean because it was difficult to keep the three-bedroom house clean with ten people living there and that they also had to stand in line for the bathrooms as they got ready for work in the morning. Mr. Khamkaeo states that the Thai workers were "treated the same as Mexicans" and that Thai workers stopped working at the orchards because there was no more work to do. Id., Ex. 6 at 1–2. It is not clear whether other Thai workers were also interviewed at this time. There are several undated and unsigned "Personal Statements of the Thai workers"; these interviews possibly occurred in September 2007. See, e.g., Personal Statement of Wichai Charoen, ECF No. 602, Ex. 2 (describing his experiences while working at Washington orchards in 2004 and 2005 but not mentioning any discriminatory conduct by the Grower Defendants); Personal Statement of Phanuphong Wongworn, ECF No. 602, Ex. 12 (detailing experiences while at Washington orchards in 2004 and 2005, including delayed payment and use of guards to prevent Thai workers from escaping by Global, but not referencing any discriminatory conduct by the Grower Defendants toward the Thai workers).

In December 2007, the Grower Defendants' counsel wrote the EEOC another position statement for three more then-recent filed charges of discrimination; this position statement articulated the previous vagueness objection and also indicated that the Grower Defendants believed the charges were untimely. *Id.*, Ex. D at 22–23. There is no filed documentation reflecting whether the EEOC responded to this letter.

Approximately one year later, in September 2008, the Grower Defendants' counsel again communicated in writing with the EEOC. ECF No. 265, Ex. C at 4–6 & Ex. D at 24–26. This letter to EEOC Enforcement Supervisor Brian Nelson emphasized the vagueness of the allegations in the charges of discrimination and that a federal judge had found that the Grower Defendants were not joint employers with Global. *Id.* Counsel for the Grower Defendants also wrote, "In our conversation yesterday, it became apparent that none of the charging parties has [sic] been interviewed by the EEOC," *id.*, Ex. D. at 25, and:

> [T]he EEOC did not receive any of the Charging Documents directly from the charging parties, but instead received them from the Thai CDC in Los Angeles. Accordingly, the EEOC has no information about what the charging parties were told the Charging Documents said, or that they were being signed under oath. All of the Charging Documents are in the English language, which none of the charging parties was able to read when they were in Washington state.

*Id.* Counsel also advises that he had a conversion with Hema Perumal, who was with the EEOC's Alternative Dispute Resolution Unit, regarding the impossibility of mediating the charges without receiving a description of the substantive facts alleged to constitute discrimination or retaliation.

One year later, in August 2009, the EEOC interviewed several Thai workers. The interview notes do not indicate any discrimination or retaliation by the Grower Defendants, *e.g.*:

- Marut Kongpia: "There were non-Thai workers while working at the farm, appeared to be Mexicans. I do not know if they were Global Horizon or farm employees. They performed the same work as the Thai workers, but they did not live in the same place. I was unaware of where they lived or if they were treated differently because I only saw them occasionally. I do not know of anyone who was treated poorly by Global Horizons or the farm because of their religion, race, or because they were Thai. No one in the farm ever say anything negative about my race, religion or Thailand or took away something from me that was an important part of my religion or national identity." ECF No. 599, Ex. F.

- Srinapha Vasunilashorn: "At Green Acres [sic], there were some people who watched us work. They worked for the farm owner. They never told us anything about our work. Charlie [Blevins, a Global supervisor,] would discipline us at the farm." ECF No. 599, Ex. G at EEOC 0002112.

- Supap Promson: Reporting that he 1) did not notice the Latino workers were being treated differently, 2) reporting that the Green Acre owner cautioned the Thai workers that fruit could not be damaged or else the Thai workers would not be able to continue working, and 3) the Thai workers were timely paid. ECF No. 599, Ex. J.

- Saiam Rodphan: Advising that the Thai workers were disciplined by Global supervisors for failing to get sufficient work done, and that the Latino workers did the same work as the

Thai workers. ECF No. 599, Ex. L at EEOC 0002230–31.

- Aran Saengvan: "No negative remarks about Thailand or Thai people or my religion were made, nor items taken away that's related to this." ECF No. 599, Ex. M at EEOC 0001850.

- Praiwan Thongbai: "[N]obody from the farm supervised us." ECF No. 599, Ex. P at EEOC 0002206.

Next, on March 8, 2010, the EEOC sent the Grower Defendants separate letters advising that "[a]dditional information is necessary in order to **begin the investigation**" of the EEOC charges against them. ECF No. 265, Ex. C at 7 & Ex. D at 7 (emphasis added). Attached to these letters was a three-and-a-half-page request for information, including:

Provide a list of all employees who performed farm work for your organization during the period April 1, 2004, to the present. This list should include all farm workers, regardless of whether they filed a charge of discrimination and regardless of whether they were employed by your organization, Global Horizons, or another entity.

*Id.*, Ex. C at 8–14 & Ex. D at 8–14. The EEOC set a March 29, 2010 response deadline. Also attached to the letter was a "[l]ist of Charging Parties who filed EEOC Discrimination Charges [a]gainst" the Grower Defendants: there were 75 listed charging parties as to Green Acre, and 28 listed charging parties as to Valley Fruit. *Id.*, Ex. D at 27 & 32.

On March 23, 2010, counsel for Grower Defendants wrote the EEOC regarding the charges of discrimination, again relaying that the Grower Defendants believed 1) the charges were untimely because no charging party had worked at the orchards since October 2005, 2) the charging parties were employed by Global, with whom the Grower Defendants were not a joint em-

ployer, and 3) the charging allegations were too vague to support "a substantive response other than a general denial." ECF No. 265, Ex. C. at 12–15 & Ex. D at 35–38. Counsel for the Grower Defendants also advised that the only documentation they possessed were billing invoices provided by Global. *Id.*, Ex. C at 15 & Ex. D at 38.

In April 2010, the EEOC interviewed a number of the charging parties. Information received from these Thai workers include:

- Praphan Lomajan: The Thai workers performed the same work as the Latino workers. "The [Thai] workers were forbidden from contacting outsiders. The farm feared that they would run off. The farm was worried about Laotians who lived in the area who may convince the workers to run off." "The supervisor of the farm threatened the workers that if they didn't work, they would be deported." ECF No. 599, Ex. H at EEOC 0004727, 0004728, & 0004730.

- Bunhom Philuk: Thai workers were threatened with deportation if they did not perform well, and supervisors from both Global and the Grower Defendants inspected their work. ECF No. 602, Ex. 10.

- Choetchai Chumpang: Thai workers worked about 8–12 hours per day at the orchards. ECF No. 599, Ex. D.

Laphit Khadthan: The Latino workers did the same work as the Thai workers. He was not threatened with deportation or physically threatened. Although the Grower Defendants' managers would inspect their work, they did not discipline the Thai workers. ECF No. 599, Ex. Q at EEOC 0002081–83.

- Prachon Ratanarak: He was paid on time and in full while he worked at Green Acre, and no Green Acre manager disciplined a Thai worker. ECF No. 599, Ex. K at EEOC 0000898–99.
- Samian Hanchat: When he worked at Green Acre in 2005, the Latino workers did the same work as the Thai workers, and the Grower Defendants gave instructions to Global supervisors and the Thai workers but did not discipline the Thai workers. ECF No. 602, Ex. 5 at EEOC 0002236–38.
- Meechok Chanphut: Green Acre did not discipline the Thai workers when he worked there during the summer and fall of both 2004 and 2005. ECF No. 602, Ex. 3 at EEOC 0002406.
- Bunthiang Suriwong: When he worked for Green Acre for two months in 2005 Green Acre management could discipline a Thai worker by speaking to a Global supervisor. ECF No. 559, Ex. N at EEOC 0000751.

Sirithon Thanasombat: The Grower Defendants would not supervise the Thai workers but did establish the work performance expectations for the Thai workers. The Thai workers did the same work as the Latino workers. ECF No. 599, Ex. I at EEOC 00057662–63.

- Chit Intip: No one from the Grower Defendants disciplined a Thai worker while he worked at the orchards during the summer of 2005. He worked approximately 8 hours a day for 5–6 days each week at the orchards. ECF No. 599, Ex. E.

During the period in which these interviews were occurring, EEOC Senior Investigator Vincient Robertson made a notation summarizing a conversation that he had with Grower Defendants' counsel on April 14, 2010, wherein Grower Defendants' counsel advised that responding to the requested document production was overly burdensome and that the requested production sought largely irrelevant documents. ECF No. 265, Ex. E at 3. Investigator Robertson also noted, "[defense counsel] said he could provide copies of invoices from Global that he believes may have the names of Global employees on them. I stated that I will get back with him." *Id.*

On April 22, 2010, the EEOC wrote the Grower Defendants' counsel and asserted that the investigation was 1) appropriate because the EEOC's investigation revealed evidence suggesting a joint-employer relationship between the Grower Defendants and Global, and 2) timely because the "EEOC has at least one timely charge against your farms." ECF No. 265, Ex. C at 16–17 & Ex. D at 39. The EEOC did not detail the referenced evidence, the claimed timely charge, or the charged discriminatory and retaliatory conduct. *Id.* The EEOC repeated that it expected the Grower Defendants to provide it with the information requested, and extended the production deadline to April 30, 2010, but did not specifically request that the Grower Defendants provide the Global billing invoices. *Id.*

On April 26, 2010, the Grower Defendants' counsel wrote the EEOC again seeking information as to the nature and timing of the charges of national origin discrimination, maintaining the lack of a joint-employer relationship, and contesting the requested information on the grounds of relevance. *Id.*, Ex. C at 20–21, & Ex. D at 41–42. Counsel stated, "I want to remind you my clients were willing to discuss providing copies of the records they have regarding Global Horizon's employment of nonimmigrant alien and resident workers between April 2004 and October [ ] 2005. The invoices from Global distinguished between workers who had to be

provided housing (nonimmigrant aliens), who were more expensive, and local residents who were not provided housing." *Id.,* Ex. C at 21–22, & Ex. D at 41–42. Also on this date, Investigator Robertson summarized in a Memorandum to File a conversation that he had with Grower Defendants' counsel wherein counsel relayed the names of the custodian of records for the Grower Defendants, and shared the district court case number wherein the court found that there was no joint-employer relationship between Global and the Grower Defendants. ECF No. 265, Ex. E at 2.

On May 6, 2010, the EEOC issued subpoenas to the Grower Defendants for the previously requested information. *Id.,* Ex. C at 32–54, & Ex. D at 54–66. On May 14, 2010, the Grower Defendants asked the EEOC to revoke or modify the subpoenas because they were overly burdensome and required the Grower Defendants to spend tens of thousands of dollars to produce largely irrelevant information. *Id.,* Ex. C at 25–30, & Ex. D at 47–52. A month later, the Grower Defendants advised the EEOC, in writing, that their position regarding the subpoenas remained the same but, if the EEOC was interested in reviewing the documents that were in the Grower Defendants' possession, Grower Defendants' counsel would discuss making "those documents available to [the EEOC] as soon as we can resolve the jurisdictional and time-bar issues." *Id.,* Ex. D at 67.

There is nothing in the record reflecting that the EEOC requested the Global invoices from the Grower Defendants before the EEOC issued substantively identical letters of determination for 71 charging parties as to Green Acre and 30 charging parties as to Valley Fruit on August 17, 2010. *See* ECF No. 265, Ex. A at 4–5 & Ex. B at 4–5; ECF No. 308 ¶ 5, & Ex. 4. In pertinent part, these letters of determination state:

The Commission has determined that there is reasonable cause to believe that Respondent discriminated and/or engaged in a pattern or practice of discrimination against a class of individuals, including the Charging Party, based on their national origin, Thai, and that Respondent retaliated against the Charging Party and the class for participating in a protected activity, in that Respondent subjected them to harassment, intimidation and different terms and conditions of employment, in violation of Title VII of the Civil Rights Act of 1964, as amended.

The Commission also makes a like and related finding that there is reasonable cause to believe that Respondent discriminated and/or engaged in a pattern or practice of discrimination against a class of individuals, including the Charging Party, based on their race, Asian, when it subjected them to harassment, intimidation and different terms and conditions of employment, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Furthermore, the Commission makes a like and related finding that there is reasonable cause to believe that Respondent constructively discharged a class of individuals when it discriminated and/or engaged in a pattern or practice of discrimination against a class of individuals, based on their national origin, Thai, race, Asian, and in retaliation for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

ECF No. 265, Ex. A at 4–5 & Ex. B at 4–5. The letters of determination invite the Grower Defendants to "join" the EEOC "in a collective effort toward a just resolution of this matter." *Id.,* Ex. A at 5, & Ex. B at 5.

On August 26, 2010, the EEOC issued its conciliation proposal to the Grower Defendants. *Id.,* Ex. F. at 20–23, 40–43, & Ex. G at 19–24. Nineteen specific requests for relief were listed, including 1) requiring the Grower Defendants to "hire all interested individuals who are otherwise qualified to work," 2) "provid[ing] sponsorship of visas and other immigrant documents necessary for those interested individuals to work in the U.S.," and 3) demanding $250,000 in pecuniary and nonpecuniary compensation for each listed charging party: 29 listed charging parties for Valley Fruit, for a total compensatory amount of $7,250,000, *id.,* Ex. F at 20–24; and 73 listed charging parties for Green Acre, for a total compensatory amount of $18,000,000, *id.,* Ex. G at 20–24. In total, the EEOC demanded $21,080,000 from Green Acre and $9,685,000 from Valley Fruit. *Id.* These letters cautioned the Grower Defendants that, if conciliation was unsuccessful, the EEOC might seek additional remedies for additional class members. *Id.,* Ex. F. at 22, & Ex. G at 21.

On September 9, 2010, Grower Defendants' counsel wrote Investigator Robertson and advised that Grower Defendants still had yet to be informed of the substantive facts supporting the asserted charges against them. ECF No. 265, Ex. F at 32–39. In addition, the letter advised that no Grower Defendants' representative had been interviewed by the EEOC. Counsel again shared that the Grower Defendants would provide the EEOC with copies of Global's invoices and supporting documentation if the EEOC so desired. *Id.,* Ex. F. at 34, 37–38.

On September 13, 2010, the EEOC sent a follow-up letter to the Grower Defendants, which stated in part:

> [T]he EEOC found reasonable cause to believe that Charging Parties and a class of similarly situated individuals were subjected to unlawful discrimina-

tion and retaliation. The EEOC made its determinations after conducting a thorough investigation, including reviews of the original charges of discrimination filed against [Green Acre/Valley Fruit] (Respondent), requesting and reviewing documents from Respondent and/or Global, and interviewing both Charging Parties and various Respondent and/or Global supervisors. The EEOC's August 17, 2010 Letter of Determination describes with sufficient specificity the particular determinations made by the EEOC.

ECF No. 265, Ex. F at 10–11 & Ex. G at 10–11. In response, on September 14, 2010, the Grower Defendants' counsel wrote the EEOC and advised that the letters of determination:

> do not provide any substantive information other than the statement that the EEOC has found reasonable cause to believe the Charging Parties and a class of similarly situated individuals were subjected to unlawful discrimination and retaliation. Those Determinations do not articulate any substantive information describing the alleged statements or conduct that the EEOC contends constitute unlawful discrimination or retaliation.

*Id.,* Ex. C at 58, & Ex. F at 4. The letter also advised that the Grower Defendants were legally unable to hire the charging parties given their immigration status but that the Grower Defendants agreed to 1) preclude discrimination on the basis of national origin or retaliation against any employee who complains about such, 2) not retaliate against any charging party, 3) provide the EEOC with a copy of its antidiscrimination policy, 4) distribute the antidiscrimination policy to its employees after the EEOC reviewed and revised it, and 5) provide annual training to all management and non-management employees and re-

port compliance of such training to the EEOC. *Id.*, Ex. C at 60, & Ex. D. at 5–6.

On September 15, 2010, Investigator Robertson and Grower Defendants' counsel conversed. Grower Defendants' counsel advised that his clients would not offer a monetary settlement component and that a federal judge had ruled there was no joint-employer relationship between the Grower Defendants and Global. *Id.*, Ex. F at 7–8. Between September 17 and 23, 2010, the EEOC sent Notices of a Failure to Conciliate to Green Acre for 71 charging parties, and similar notices to Valley Fruit for 28 charging parties. These notices advised that the EEOC "determines that further conciliation efforts would be futile or non-productive.... Accordingly, we are at this time forwarding the case to our Legal Department for possible litigation." *Id.*, Ex. A at 6, & Ex. B at 6; ECF No. 308 ¶ 7.

Seven months later, on April 19, 2011, the EEOC filed this lawsuit. ECF No. 1. The next day, the EEOC issued a press release, in which Global is identified as "engag[ing] in a pattern or practice of national origin and race discrimination, harassment, and retaliation, when it trafficked over 200 Thai male victims to farms in Hawaii and Washington where they were subjected to severe abuse." ECF No. 599, Ex. A. The press release also states, "[t]he EEOC asserts that the farms not only ignored abuses, but also participated in the obvious mistreatment, intimidation, harassment, and unequal pay of the Thai workers." *Id.*

On March 11, 2012, almost a year after the lawsuit was filed, the EEOC disclosed its Federal Rule of Civil Procedure 26(a) initial disclosures, wherein the EEOC attached a list of Thai claimants by initials only: 87 claimants as to Green Acre, and 37 claimants as to Valley Fruit. ECF No. 273 at 2; ECF No. 274, Ex. 1. Then in October 2012, the EEOC advised that it

sought $300,000 in emotional distress and punitive damages per class member: 140 claimants as to Green Acre, for a total requested monetary damages award of $42,000,000, and 85 claimants as to Valley Fruit, for a total requested damages award of $25,500,000. ECF No. 274, Ex. 2.

On November 13, 2012, EEOC counsel advised the Court that it had reviewed the Global invoices, which included the names and corresponding dates of paid employment for the Thai workers who worked at the Grower Defendants' orchards, which the Grower Defendants had produced to Global on October 5, 2012, and the EEOC discovered more Thai individuals who had worked at the Grower Defendants' orchards and thus would add claimants. ECF No. 232 at 2:19–3:3 & 4:22–5:1. On November 29, 2012, the EEOC supplemented its discovery responses and identified 143 claimants as to Green Acre and 86 claimants as to Valley Fruit. ECF No. 274, Ex. 3.

On December 7, 2012, the Grower Defendants filed a motion to dismiss newly-added Thai claimants for lack of jurisdiction because the EEOC did not make a reasonable-cause determination or conciliate the claims for the newly added Thai claimants before pursuing litigation on their behalf. ECF No. 255. One month later, on January 10, 2013, the EEOC again supplemented its discovery responses, identifying 145 claimants as to Green Acre and 199 claimants as to Valley Fruit. ECF No. 274, Ex. 4.

On January 17, 2013, the Court ordered the EEOC to supplement its response to the dismissal motion by providing certain factual information. ECF No. 280. On January 25, 2013, the Court granted the EEOC an extension of time to provide the requested information and also clarified that the Court was seeking:

1) [a] list [of] the individuals that the EEOC interviewed after receiving the charges of discrimination against the Grower Defendants in April 2006 and terminating the conciliation process in September 2010, and 2) [a] descri[ption of] the documents that were requested regarding the Grower Defendants or the Thai individuals working at those orchards from the Claimants, Global, or other individual or non-Grower-Defendant entities during the identified time period.

ECF No. 293 at 2. On February 7, 2013, the EEOC filed its supplement: Anna Park's Declaration. ECF No. 301. Ms. Park, counsel for the EEOC, declared that 72 charging parties were interviewed regarding the alleged discrimination occurring at Green Acre, and 28 charging parties were interviewed regarding the alleged discrimination at Valley Fruit. ECF No. 301 at 8. Ms. Park did not specify who conducted those interviews or when the interviews occurred. *Id.* Ms. Park also did not identify whether any Grower Defendant agent or representative was interviewed by the EEOC in connection with the alleged discrimination and retaliation occurring at the Grower Defendants' orchards, stating that Title VII prohibits the EEOC from naming non-charging parties that were interviewed "where such a witness testified to the agency regarding Global's farm-clients that were not sued by the EEOC." *Id.* ¶ 17. Ms. Park did disclose:

> The EEOC's investigation revealed that Global supplied 199 Thai workers to work at farms operated by the Grower Defendants Green Acre Farms, Inc. and 245 Thai workers to work. at farms operated by Defendant Valley Fruit Orchards, LLC. That is the full scope of the potential· class for each of the defendants before this Court.

Park Decl., ECF No. 301 ¶ 24. Also in early February 2013, the EEOC again supplemented its discovery responses, identifying 245 Claimants as to Green Acre and 199 Claimants as to Valley Fruit: the reverse of that indicated in Ms. Park's declaration. ECF No. 308 ¶ 11 & Ex. 9.

On March 13, 2013, EEOC counsel Ms. Park and Sue Noh traveled to Yakima to meet with the Grower Defendants' counsel regarding the possibility of settlement. Ms. Park proposed a settlement demand of approximately $25,000 per claimant, which at that time included 444 individuals, many of whom worked on Grower Defendants' orchards only in 2004, for a total of $11,100,000. On March 20, 2013, the EEOC sent a proposed consent decree to Grower Defendants' counsel. ECF No. 599, Ex. R. On April 11, 2013, the Grower Defendants sent a counter-proposal to the EEOC's consent decree. ECF No. 599, Ex. S. Upon receiving the counter-proposal, EEOC counsel advised that she would get back to the Grower Defendants' counsel regarding the counter-proposal. ECF No. 599, Ex. S. No timely substantive response was received by the Grower Defendants' counsel regarding the counter-proposal but in July 2013 EEOC counsel emailed Grower Defendants' counsel advising them that Los Angeles-based EEOC counsel would travel to visit Grower Defendants' counsel in Yakima, Washington in either August or September 2013. ECF No. 602, Ex. 1.

In June 2013, the Court granted the Grower Defendants' Motion for Summary Judgment as to Untimely Claimants and ruled that the EEOC could not pursue relief on behalf of untimely claimants: those who did not work at Green Acre after June 22, 2005, or Valley Fruit after June 28, 2005. ECF No. 348. The Court ordered EEOC to disclose the names of the claimants on whose behalf it timely sought relief. *Id.* On August 2, 2013, pursuant to the Court's June Order, the

EEOC disclosed the names of 58 timely claimants as to Green Acre and 83 timely claimants as to Valley Fruit. ECF No. 409, Ex. A. The EEOC did not at that time disclose whether these claimants were claimants for whom the EEOC issued a reasonable-cause determination or whether these were claimants that were added during the course of the lawsuit.

In February 2014, the EEOC filed declarations, which were signed by Thai workers in 2013 and 2014, pertaining to the Thai workers' experiences at the Grower Defendants' orchards in 2004 and 2005. ECF Nos. 485–487. In these 2013 and 2014-signed declarations, many of the Thai workers declare that they were paid late, worked less than 40 hours a week, were threatened with deportation if they did not meet quotas, lived in overcrowded and dirty housing, rode overcrowded transportation, and did not receive medical care when they worked at the Grower Defendants' orchards in Washington, Maui Plantation in Hawaii, and other farms.

On May 28, 2014, after reviewing the numerous declarations, deposition testimony, and other evidence, the Court granted summary judgment in the Grower Defendants' favor because the EEOC failed to present evidence to establish a triable issue of fact that the Grower Defendants violated Title VII by creating a hostile work environment, taking an adverse employment action against a Thai worker, retaliating against a Thai worker, or constructively discharging a Thai worker on the basis of his race or national origin, notwithstanding a triable dispute of fact as to whether the Grower Defendants, along with Global, could be considered the Thai workers' employer. ECF No. 582. This motion for attorney's fees by the Grower Defendants followed the entry of summary judgment in their favor.

## D. Analysis

■ This case presented challenges to the EEOC: numerous non-English speaking Thai individuals who worked at a variety of farms in the United States performing various tasks for varying periods of time and then who, following employment, resided at various locations throughout the United States or Thailand. Detailing what conduct and events occurred at what farm and/or by what business would have been a challenging task for the EEOC. Yet, these challenges were not an excuse for the EEOC to forego a reasonable and diligent investigation of the allegations of discrimination as to each business before filing a Title VII lawsuit that plausibly stated a claim for relief against that business. The Court finds the EEOC failed to conduct an adequate investigation before filing the lawsuit against the Grower Defendants and as a result its Title VII claims against the Grower Defendants were baseless, unreasonable, and frivolous.

The Court's conclusion is not a *post hoc* determination based on the entry of summary judgment in the Grower Defendants' favor. *See, e.g., EEOC v. Reeves*, 262 Fed. Appx. 42, 44 (9th Cir.2007) (unpublished opinion) (recognizing that if a claim withstands summary judgment it is unlikely to be frivolous) (citing *Sullivan v. Sch. Bd. of Pinellas Cnty.*, 773 F.2d 1182, 1189 (11th Cir.1985)). Rather, the evidence and documentation pertaining to the parties' pre-lawsuit communications and the EEOC's investigation (or lack thereof) as to the Grower Defendants shows that the EEOC was not prepared to allege plausible, reasonable, or non-frivolous Title VII claims against the Grower Defendants.

This unpreparedness is highlighted by the ever-changing number of Thai claimants throughout this lawsuit. The EEOC filed this lawsuit without knowing which Thai claimants worked at the Grower De-

fendants and when. This lack of knowledge occurred notwithstanding that the EEOC had a simple method of determining which Thai claimants worked at the Grower Defendants and when: reviewing the Global invoices. The EEOC was aware of the existence of these invoices before issuing its letters of determination, which was before the filing of the lawsuit. For an unexplained reason, the EEOC did not obtain and review the Global invoices until after it filed the lawsuit. The EEOC also filed the lawsuit without interviewing a Grower Defendant manager, supervisor, or owner.

Further, although the EEOC should have known that many of the Thai workers worked at different farms throughout the United States while employed with Global, there is no indication that the EEOC took steps to identify and clarify at which farm a worker experienced the claimed discriminatory treatment, *e.g.*, lack of pay, lack of work hours, racial and national origin slurs, deficient housing and transportation, and unequal treatment. There is no indication that the EEOC considered or reacted to the August 2009 and April 2010 interview notes where several Thai workers provided information that the Grower Defendants did not treat the Thai workers unfairly, provided 40 hours of work a week, and treated the Thai workers the same as the Latino workers.

The EEOC cannot claim that it was unaware of such deficiencies in its investigation against the Grower Defendants as the Grower Defendants' counsel repeatedly advised the EEOC that the charges of discrimination, and subsequent letters of determination, failed to allege the purported discrimination by the Grower Defendants with sufficient specificity so as to put the Grower Defendants on notice of their challenged conduct. *See EEOC v. Agro Dist., LLC*, 555 F.3d at 473; *EEOC v. TriCore Reference Labs.*, 493 Fed.Appx. 955 (10th Cir.2012) (unpublished opinion) (affirming an award of attorney's fees to a prevailing defendant because the EEOC should have ceased the proceeding once the defendant issued a position letter identifying the deficiencies in the EEOC's case). And then with knowledge that the charges of discrimination and letters of determination were vague as to the Grower Defendants' purported discriminatory conduct, the EEOC made a conciliation demand against the Grower Defendants for $300,000 in emotional distress and punitive damages per class member: resulting in a monetary damages request that exceeded 9 million dollars for each Grower Defendant. Following the Grower Defendants' unsurprising declination of this damages demand in light of the vague and factually unexplained charges, the EEOC declined to consider the Grower Defendants' non-damages offers of conciliation. There is no information or documentation before the Court that the EEOC conducted any further investigation before filing this lawsuit seven months later, which again sought damages exceeding 25 million per Grower Defendant and reinstatement of the Thai workers' employment at the orchards, where they had not worked since 2004 or 2005.

The EEOC maintains that it had a factual basis to assert Title VII claims against the Grower Defendants under the joint-employer theory of liability, highlighting that the Court found genuine disputes of fact as to whether the Grower Defendants jointly employed the Thai workers with Global. However, the EEOC's interpretation of the joint-employer theory of liability was not based on a reasonable reading of the case law supporting this doctrine. Relying on *EEOC v. Global Horizons*, 860 F.Supp.2d 1172 (D.Haw.2012), the EEOC maintained that the Grower Defendants would be liable for Global's discriminatory practices if the Grower Defendants knew

or should have known about these practices and failed to address them, without regard to whether Global's discriminatory practice was in a matter over which a Grower Defendant had control. *See* EEOC's Reply Memorandum Supporting its Motions to Compel the Grower Defendants to Respond to the EEOC's Documents Requests and Interrogatories, ECF No. 452 at 2–3. The EEOC's reading of the Hawaii District Court's joint-employer-liability analysis in *EEOC v. Global Horizons* was unfounded. The case law cited and quoted by the Hawaii District Court:

> all recognize that in order for an entity to be held liable under Title VII that entity must 1) be an "employer" of the plaintiff and 2a) have discriminated against the plaintiff by its own conduct, or 2b) knew or should have known of a joint employer's discriminatory conduct against the plaintiff in a matter within the entity's control, and the entity failed to take measures within its control to correct the joint employer's discriminatory conduct.

Order Ruling on the EEOC's Motions to Compel Discovery Responses from the Grower Defendants, ECF No. 460 at 5–6 (citing cases). This standard was in place when the EEOC conducted its investigation before it filed this lawsuit.

■ Therefore, the EEOC's expansive argument that a joint employer is always liable for the discriminatory acts of the other joint employer was frivolous. The existing case law required more than a joint-employer relationship in order to impose liability for the other employer's discriminatory acts. Instead, to pursue Title VII claims against the Grower Defendants, the EEOC needed information supporting a plausible finding that the Grower Defendants 1) discriminated against a Thai worker (direct liability), or 2) knew or should have known that Global discriminated against a Thai worker in a matter

that was within a Grower Defendant's control and that the Grower Defendant failed to take measures within its control to correct Global's discriminatory conduct (joint-employer liability). The sparse investigation conducted by the EEOC before filing the lawsuit did not present any information that would lead the EEOC to reasonably conclude that either of these bases for liability was potentially satisfied as to the Grower Defendants and certainly did not reasonably support the damage demands. The EEOC was aware of the contractual division of responsibilities between Global and the Grower Defendants and that the information provided by the Thai claimants as to claimed discriminatory practices fell within matters that were Global's responsibility.

The EEOC maintains that pre-lawsuit interview notes supported a reasonable conclusion that the Grower Defendants were liable as a joint employer with Global, and also contends that the pre-lawsuit interview notes were consistent with the Thai workers' post-lawsuit statements. First, the Court finds that many of pre-lawsuit interview notes, which summarize the Thai-workers' experiences while working for Global, vary from what that particular Thai worker later stated in a 2013 and 2014 signed declaration. *See* Grower Defendants' Joint Motion for Attorney's Fees as Prevailing Parties under Title VII, ECF No. 598 at 8–9. The EEOC attributes these variances to the fact that the Thai workers did not review the pre-lawsuit investigation notes for accuracy. The Court questions whether it is reasonable for the EEOC to base its decision to file a lawsuit against a business on interview notes that were neither reviewed nor signed by a claimant. Yet, the Court need not resolve that question because here the information before the EEOC in April 2010, including the pre-lawsuit investigation notes, clearly did not justify the filing of Title VII claims against the Grower

Defendants on a specific Thai worker's behalf, or as a pattern-and-practice claim of discrimination, even under the joint-employer theory of liability. *See EEOC v. Agro Dist., LLC,* 555 F.3d 462, 473 (5th Cir.2009) (affirming award of attorney's fees to prevailing defendant because once the worker's deposition was taken it was clear the EEOC's action lacked foundation); *EEOC v. Peoplemark, Inc.,* 732 F.3d 584, 591–92 (6th Cir.2014) (finding that when litigation discovery uncovered that a claim was groundless, the EEOC should have reassessed the claim and chosen not to pursue it). The pre-lawsuit notes purportedly reflecting the personal experiences of the interviewed Thai workers did not identify that any claimed experienced discrimination, including hostile work environment, unfair treatment, or constructive discharge, was in a matter that was in the control of both the Grower Defendants and Global, and that the Grower Defendants should have reasonably known about this claimed experienced discrimination.

Further, in the complaint, the EEOC frivolously sought backpay and reinstatement for the Thai claimants, requesting that Global and the Grower Defendants make "whole [Laphit Khadthan/Marut Kongpia] and similarly situated individuals, by providing *appropriate backpay with prejudgment interest,* in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to *reinstatement* of [Laphit Khadthan/Marut Kongpia] and similarly situated individual." ECF No. 1 at 10 ¶¶ J & K (emphasis added). In April 2011, the EEOC knew, or should have known, that Global was no longer approved to provide H–2A guest workers to American farms and that many of the Thai individuals were not lawfully in the United States. Accordingly, an award of backpay was inappropriate and reinstatement of these Thai workers was impossible for the Grower Defendants. *See Propak Logistics,* 746 F.3d at 151 (finding that attorney's fees were justified in part because plaintiff sought relief that it knew or should have known was unavailable).

## E. Conclusion

In summary, this is an exceptional case where the EEOC failed to conduct an adequate investigation to ensure that Title VII claims could reasonably be brought against the Grower Defendants, pursued a frivolous theory of joint-employer liability, sought frivolous remedies, and disregarded the need to have a factual basis to assert a plausible basis for relief under Title VII against the Grower Defendants. *See Equal Employment Opportunity Commission v. Pierce Packing,* 669 F.2d 605, 609 (9th Cir.1982) (finding that the premature filing of a Title VII case by the EEOC can be deemed an unreasonable action, thereby justifying an award of attorney's fees to the prevailing defendant). The Court's finding is not based on the EEOC's litigation and discovery practices. *Cf. Serrano v. Cintas Corp.,* 699 F.3d 884, 905 (6th Cir.2012) (reversing district court's award of attorney's fees to the defendant because, in part, the district court based its ruling on the EEOC's litigation filings and discovery practices). The Court exercised "caution" when finding that an award of attorney's fees to the prevailing Grower Defendants is appropriate.

For the above-given reasons, **IT IS HEREBY ORDERED:**

1. The Grower Defendants' Joint Motion for Attorney's Fees as Prevailing Parties under Title VII, **ECF No. 598, is GRANTED.**

2. No later than **30 days** after this Order's entry, the Grower Defendants may file a motion seeking an award of reasonable attorney's fees and costs, which is to be supported by declarations from counsel.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to counsel.